**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

CUST-O-FAB SERVICE COMPANY, LLC, )
                                           )
        **Plaintiff,**             )
                                           )
**vs.**                                    )     **No.  03-CV-495-TCK-FHM**
                                         )
ADMIRAL INSURANCE COMPANY,      )
                                         )
        **Defendant.**           )

**<u>OPINION AND ORDER</u>**

Before the Court are the parties' cross motions for summary judgment (Docket Nos. 56 and 58).[1]  This action comes to the Court on remand from the United States Court of Appeal for the Tenth Circuit ("Tenth Circuit").  Initially, this Court found Admiral Insurance Company ("Admiral" or "Defendant") had no duty to defend or indemnify and was entitled to summary judgment.  Cust-O-Fab Company, LLC ("Cust-O-Fab" or Plaintiff") appealed.   The Tenth Circuit reversed and remanded for further proceedings consistent with its Order.  (*See* ORDER AND J. No. 04-5092 slip op. at 13).   Specifically, the Tenth Circuit set out four issues for this Court to revisit:   1) determination of the meaning of the contract exclusion in the relevant endorsement; 2) whether the administration clause in the Employee Benefits Liability endorsement of the policy applies; 3) whether Defendant has the duty to defend Plaintiff in the Potter County action; and 4) whether Defendant has a duty to indemnify Plaintiff.   The Tenth Circuit affirmed this Court's holding that Defendant was not precluded from asserting certain policy exclusions at the summary judgment

---

[1]Although Docket No. 58 is entitled Defendant Admiral Insurance Company's Brief in Response to Plaintiff's Motion for Summary Judgment, therein Defendant moves the Court for an order of summary judgment in Defendant's favor.

stage.

**I.      Factual Background**

Cust-O-Fab purchased commercial general liability insurance from Admiral, with an endorsement for Employee Benefits Liability  Coverage (the "EBL Endorsement to the Policy"), under insurance policy number A01AG10931 ("Policy") effective July 1, 2001 to July 1, 2002.

The EBL Endorsement to the Policy provides the following coverage:

> We will pay those sums which you become legally obligated to pay as damages sustained by an employee, former employee, prospective employee or the beneficiaries or legal representatives thereof caused by your negligent act, error or omission or any other person for whose acts you are legally liable in the "administration" of your "Employee Benefits Programs" in the "policy territory."

(Pl.'s Mot. for Summ. J. Ex. B.)  The term "administration", found in the EBL Endorsement to the Policy above, is defined as follows:

> (a)      providing interpretations and giving counsel to your employees regarding your "Employee Benefits Programs;"
> (b)      handling records in connection with your "Employee Benefits Programs;"
> (c)      the enrollment, termination or cancellation of employees under your "Employee Benefits Programs."

(*Id.*)  The EBL Endorsement to the Policy provides the following relevant exclusion under the insuring agreement:

> 2.      Exclusions
>
> This insurance does not apply to
>
> (e)      to any loss or claim arising out of failure of performance of any contract by an insurer;

(*Id.*  (hereinafter referred to as the "Contract Exclusion").)

2

Plaintiff provides health care benefits for eligible employees through an Employment Health Plan (the "Plan"). Plaintiff is the administrator of the Plan. At the relevant time, Plaintiff retained Spectrum Risk Management Services, Inc. ("Spectrum") as its third-party administrator of the Plan.[2]

On August 19, 2001, John Cummings ("Cummings"), a former employee of Plaintiff, was severely injured in an automobile accident. Cummings was treated for his injuries at Northwest Texas Healthcare System ("the Hospital") in Amarillo, Texas. The Hospital provided extensive medical care, treatment, supplies, services, and equipment to Cummings from the time of his admission until October 12, 2001. The medical charges total over $430,000.00.

On August 23, 2001, Plaintiff, via Spectrum, gave written authorization to the Hospital for treatment of Cummings. On August 31, 2001, the Hospital agreed to provide services to Cummings at a reduced fee based on Plaintiff's and Spectrum's representations that Cummings' medical treatment was covered under the Plan. This agreement was memorialized in a written contract. On October 4, 2002, Cummings assigned his benefits under the Plan to the Hospital.

On November 14, 2001, Cummings and the Hospital were notified that, in fact, Cummings' claim was not covered under the Plan and that his claim was denied. The decision to deny the claim was based on the Plan's exclusion for treatment which occurred as a result of illegal use of alcohol. Following is the Plan's alcohol exclusion:

> For all Medical Benefits shown in the Schedule of Benefits, a charge for the following is not covered:
>
> > (2)    Alcohol. Services, supplies, care or treatment to a Covered Person for an Injury or Sickness which occurred as a result of the Covered

---

[2]Spectrum retained Beech Street Corporation ("Beech Street") and Medical Services Management, Inc. ("MSM") to assist in third party administration tasks. For purposes of this Order, Spectrum, Beech Street, and MSM are collectively referred to as "Spectrum."

> Person's illegal use of alcohol.  The arresting officer's determination
> of inebriation will be sufficient for this exclusion.

(Pl.'s Mot. for Summ. J. Ex. A, p. 28.)  After the Hospital received notification that Plaintiff and Spectrum were now denying Cummings' claim, the Hospital's attorney sent numerous letters to Plaintiff and Spectrum, arguing they misconstrued the Plan provisions and erroneously denied Cummings' claim.  The Hospital disputed Cummings had an illegal blood alcohol level. (*See* Pl.'s Mot. for Summ. J. Ex. O.)   Correspondence from the Hospital also warned of litigation based on Plaintiff's and Spectrum's denial of Cummings' claim.  *Id.*   Plaintiff and Spectrum, having information that Cummings' blood alcohol level exceeded Texas's legal limit for operating a motor vehicle, continued to refuse coverage based on the provision in the schedule of benefits.

On June 2, 2002, Plaintiff, through its insurance broker, notified Defendant of a possible claim based on the Hospital's demand for payment for treatment provided to Cummings and sought to invoke Defendant's duty to defend.

On October 9, 2002, Defendant tendered a final denial of coverage under the Policy for Plaintiff's claim, stating the decision to deny Cummings' claim for medical benefits was not included in the definition of "administration" under the Policy.  (Pl.'s Mot. for Summ. J. Ex. R.)

On March 3, 2003, the Hospital sued Plaintiff and Spectrum in the District Court of Potter County for the State of Texas (the "Potter County action") for payment of the medical services rendered to Cummings.  The Potter County petition included claims for breach of contract, negligent misrepresentation, promissory estoppel, breach of implied contract, violation of the Texas PPO Prompt Payment Act, and common law and statutory claims of bad faith.  The Potter County petition alleged Plaintiff and Spectrum (as agents of Cust-O-Fab) were jointly and severally liable to the Hospital for the costs of Cummings' medical care.

4

On April 30, 2003, Plaintiff's insurance broker notified Defendant that Plaintiff had been sued in Potter County.  The broker requested Defendant reconsider its earlier denial, asserting Spectrum, as Plaintiff's agent, was acting within the definition of "administration" under the policy. On May 21, 2003, a representative of Defendant notified Plaintiff's broker it continued to "have questions" whether it had a duty to defend.  The parties to the Potter County action settled all claims on December 31, 2004.  Cust-O-Fab paid $105,000.00 to the Hospital in exchange for a release of claims against Cust-O-Fab and a dismissal with prejudice in the Potter County action.

## II.    Applicable Law

The following legal standards are applicable in this matter.

### A.  Cross Motions for Summary Judgment

Summary judgment is generally appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c). The Court must view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986); *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992).  Where the nonmoving party will bear the burden of proof at trial, that party must go beyond the pleadings and identify specific facts that demonstrate the existence of an issue to be tried by the jury.  *See Mares*, 971 F.2d at 494.

Because the parties have filed overlapping motions for summary judgment, a modified summary judgment standard is applicable.  When parties file cross-motions for summary judgment, the Court may assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nonetheless inappropriate if disputes remain as to material facts.  *James*

*Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998).  Where different ultimate inferences may properly be drawn, summary judgment is not appropriate.  *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000).

      B.      *Choice of Law*

Because this is a diversity action, Oklahoma choice of law rules apply.  *See Taylor v. Phelan*, 9 F.3d 882, 885 (10th Cir. 1993). Oklahoma's choice of law statute provides that the nature, validity, and interpretation of a contract is governed by the law where the contract is made or is to be performed.  OKLA. STAT. tit. 15, § 162.  Here, the Policy was made in Oklahoma and was to be performed in Oklahoma.

      C.      *Contract Interpretation*

All parties agree Oklahoma law provides that an unambiguous insurance policy is interpreted according to the plain meaning of the policy.  *See Max True Plastering Co. v. United States Fid. & Guar. Co.*, 912 P.2d 861 (Okla. 1996).  Under Oklahoma law, when no ambiguity exists in a contract, the intent must be determined from the words utilized in the contract.  *Public Serv. Co. of Okla. v. Burlington N. R.R. Co.*, 53 F.3d 1090 (10th Cir. 1995).  The intention of the parties to an unambiguous contract cannot be determined from surrounding circumstances, but must be gathered from the four corners of the instrument.  *McClain v. Ricks Exploration Co.*, 894 P.2d 422 (Okla. Ct. App. 1992). Oklahoma recognizes the reasonable expectations doctrine when the policy is ambiguous.  *See Max True Plastering*, 912 P.2d at 864.   In such situations, coverage exists if the insurer or its agent creates a reasonable expectation in the insured that coverage exists.  *See id.* at 864, 867, 870.

      D.      *Duty to Defend and Indemnify*

Under Oklahoma law, the duty to defend is measured by the nature and type of risks covered by the policy as well as by the reasonable expectations of the insured. *See First Bank of Turley v. Fid. and Deposit Ins. Co. of Md.*, 928 P.2d 298, 303 (Okla. 1996). Thus, "[a]n insurer has the duty to defend an insured whenever it ascertains the presence of facts giving rise to the potential of liability under the policy." *Id.* In determining the duty to defend, the Court must focus upon the facts, rather than upon the allegations of the complaint in the underlying lawsuit, as the complaint may or may not control the ultimate determination of liability. *Id.* at 304 n.13 (citing *Texaco, Inc. v. Hartford Acc. and Indemnity*, 453 F.Supp. 1109, 1113 (E.D. Okla. 1978)). That is, the duty to defend cannot be limited by the precise language of the pleadings; rather, "the insurer has a duty to look behind the third party's allegations to analyze whether coverage is possible." *First Bank of Turley,* 928 P.2d at 304 n.15 (emphasis omitted). Provided there is a valid contract for insurance, Admiral has a duty to indemnify Plaintiff. OKLA. STAT. tit. 36 §, 102.

## III.    Analysis

### A.    *Application of the Policy's Contract Exclusion*

"The central issue on appeal [was] whether the Policy's 'contract' exclusion applies to the Hospital's claims against Cust-O-Fab as pleaded in the Texas lawsuit." (ORDER AND J. No. 04-5092 slip op. at p. 7.) In the Court's initial opinion on summary judgment, the Court found the following exclusion —as quoted by Defendant and Plaintiff in their briefs to the Court—applied to preclude coverage on Plaintiff's contractual claims:

This insurance does not apply to:

(e)    to any loss or claim arising out of a failure of performance of any contract by an insure[d] (sic).

(*See* ORDER at 11 (N.D. Okla. June 15, 2004) quoting Def.'s Mot. for Summ. J. p. 21 but citing Pl.'s

7

Mot. for Partial Summ. J. Ex. B.)[3]  As the preceding cite indicates, the Court, in error, specifically

relied on the Contract Exclusion language quoted to it by Defendant.  Rather than "*insured*," the

Contract Exclusion actually reads "*insurer*."  Compounding the problem, in Plaintiff's Objection

to Defendant's Motion for Summary Judgment, Plaintiff also failed to quote the correct language

to the Court regarding the Contract Exclusion.  Plaintiff recited the exclusion as such: "any loss or

claim arising out of a failure of performance of any contract by an insure[d]."  (Pl.'s Obj. to Def.'s

Mot. for Summ. J., p. 5 quoting Def.'s Mot. for Summ. J., p. 21.)  At the initial summary judgment

phase, Plaintiff's *sole* argument against the Contract Exclusion was that Defendant was estopped

from raising policy defenses not asserted in the initial denial of coverage.[4]   Hence, the Tenth

Circuit's statement that, "[w]ith no explanation, the district court concluded the word '*insurer*"

should be read as '*insured*,'" (*see* ORDER AND J. No. 04-5092 slip op. at 13) (emphasis in original),

while factual, does not represent what actually occurred when this case was initially argued and

decided.[5]  Fortunately for Plaintiff, the Tenth Circuit's review of this Court's order on summary

_____

[3]Defendant again quotes this as the policy language in its Response to Plaintiff's Motion for Summary Judgment at page 18 and Defendant's Reply to Plaintiff's Objection to Defendant's Motion for Summary Judgment at page 3.  Furthermore, the Plaintiff, throughout the briefing on the initial motions for summary judgment never raised the issue of the incorrectly quoted policy language and in fact, adopted Defendant's citation of the language to the Court in its own briefing.

[4]This Court's conclusion on the estoppel issue—that Defendant was not estopped from asserting the contract exclusion argument at the summary judgment stage—was affirmed by the Tenth Circuit.

[5]Likewise, the Tenth Circuit's conclusion that, "[w]hat Admiral argues, and the district court apparently accepted, is not that the term "insurer" is ambiguous standing alone but ambiguous when the Policy as whole is examined" is an inaccurate characterization of the arguments at the district court level.  Neither Admiral nor Cust-O-Fab made any argument in the initial motions for summary judgment that the term "insurer" was, or was not ambiguous.  Rather, Admiral asserted, and Plaintiff and the Court accepted, that the term was actually *insured*, rather than *insurer* and the majority of the errors proceeded from there.

8

judgment was *de novo*.

As the Tenth Circuit notes, the plain language of the contract exclusion reads as follows:

This insurance does not apply to:
(e) to any loss or claim arising out of a failure of performance of any contract by an *insurer*;

(Pl.'s Mot. for Summ. J Ex. B (emphasis added).)   As the Tenth Circuit all but concluded, the exclusion therefore cannot alleviate Defendant of its duty to defend. Once the Contract Exclusion is read as written, it is clear that there is no ambiguity in the term.  Defendant presents absolutely no persuasive argument otherwise.[6]  The natural interpretation of the exclusion language applies to third-party insurance providers such as health, life, and unemployment insurers, and not to Cust-O-Fab.  Thus, the Contract Exclusion cannot preclude coverage of Plaintiff's contractually based claims, and Defendant has a duty to defend provided the actions of the Plaintiff fall within the definition of "administration."

B.      *Whether the Administration Clause in the EBL Endorsement of the Policy Applies*

Defendant persists with its argument that it has no duty to defend, because the allegations made by the Hospital do not arise from the "administration" of claims, as defined by in EBL Endorsement to the Policy.[7]

Plaintiff argues there is potential for liability under the EBL Endorsement to the Policy through subsections (a) and (b) of the definition of "administration."  (*See supra* at p. 2)  Plaintiff

---

[6]For a full discussion of why Defendant's position that the word *insurer* should actually be *insured*, is implausible, see the Tenth Circuit's discussion of the issue in its ORDER AND J. No. 04-5092 slip op. at 9.

[7]Because "administration" is defined in the EBL Endorsement to the Policy, the Court finds no ambiguity in the term.  *See Max True Plastering Co. v. U. S. Fid. & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996).

contends the allegations in the Potter County action fit within subsection (a) and (b) because Plaintiff and Spectrum both counseled and interpreted the Plan when it made its initial communications to the Hospital and Cummings regarding coverage and when it later denied coverage. Likewise, Plaintiff argues, it and Spectrum necessarily handled records in connection with the Plan. The Court agrees. In determining whether Cummings was covered, Plaintiff necessarily had to interpret the Plan, and those interpretations were communicated to Cummings and/or his legal representative.[8] Similarly, Spectrum, in reviewing Plaintiff's records and memorializing the contract for payment at a reduced fee handled records in connection with the Plan.

Defendant contends the term "administration" means a ministerial or secretarial duty rather than a discretionary duty involving "decision-making" and resulting in a denial of benefits. Defendant cites *Maryland Casualty Company v. Economy Bookbinding Corporation Pension Plan and Trust*, 621 F. Supp. 410, 414 (D.N.J. 1985) for this proposition. *Maryland Casualty*, also a duty to defend case, involved a policy with a similar definition of "administration." There, the court found the insured had no obligation to defend on the following claims: improper investment, failure to collect accounts receivable, disappearance of loans taken against life insurance policies, and failure to respond to the pension plan beneficiaries' requests for pension plan documents. The *Maryland Casualty* court held the term "administration" in the applicable sense, means relatively routine, ministerial acts rather those acts involving decision-making. *Id.* Hence, the court reasoned only the claims against the insured for failure to detect embezzlement and improper calculation of

---

[8]Regarding Defendant's arguments for non-coverage because Spectrum was not a named insured or an additional insured under the Policy and that the Hospital was not a covered party under the insuring agreement, the Court incorporates by reference its Order of June 15, 2004. It does not appear that the parties appealed the Court's conclusions on these matters as the Tenth Circuit did not take issue with Court's conclusions on these matters

benefits would fall within the definition of "administration" and trigger the duty to defend. *Id.*

Defendant argues Plaintiff's decision to deny Cummings' benefits, and the actions leading up to the denial, align with claims in *Maryland Casualty* that were found non-administrative or discretionary. To the Court's mind however, Plaintiff's actions in both finding coverage and then later denying coverage were administrative non-discretionary duties. It is undisputed that two days after Cummings' accident, Cummings' brother, also an employee of Plaintiff, faxed portions of the Plan to the Hospital regarding Cummings' coverage. On August 23, 2001, Spectrum (through its agent, Beech Street) sent correspondence to the Hospital (which it had previously sent to Cummings), stating a seven day hospital stay appeared to be medically appropriate and that the determination that the stay was medically appropriate was "based on information received and [did] not guarantee payment of benefits." (Pl.'s Mot. for Summ. J. Ex. I.) The letter also stated that "[b]enefits are also subject to eligibility and coverage, at the time services are rendered, which must be verified by the Employer/Policyholder . . ." *Id.* Thereafter, Plaintiff and Spectrum assured the Hospital that Plaintiff was covered and negotiated the contract for payment of the Hospital's services. The Hospital alleges as much in the Potter County petition, "[s]hortly after admission, [the Hospital] contacted [Cust-O-Fab and Spectrum] and confirmed that there was coverage for the patient's injuries. In addition, [Cust-O-Fab and Spectrum] preauthorized, and pre-certified, the treatment to be provided to the patient, and verified coverage for such treatment." (Pl.'s Mot. for Summ. J. Ex. F at pp. 2-3.)

As stated above, these tasks appear ministerial and fall within definition of "administration" included in the EBL Endorsement to the Policy. The Tenth Circuit agreed with the Court's conclusions on this point. (*See* ORDER AND J. No. 04-5092 slip op. at 11 n.2.) However, the Tenth

Circuit noted that the Court never expressly addressed whether the definition of "administration" includes "(1) the representations (by Spectrum and Beech Street) that form the basis for the Hospital's negligent misrepresentation claim or (2) the agreement negotiated by MSM[9] for discounted fees, which underlies the contract claim." (ORDER AND J. No. 04-5092 slip op. at 10-11.)

Like their actions in finding coverage, Plaintiff and Spectrum's later decision to deny coverage was administrative in nature.  Spectrum's actions of agreeing to provide Cummings with medical services at a reduced fee, and of memorializing that agreement, and directing the Hospital to send its bills to Spectrum clearly fall within the Policy's definition of administration.  Once Cust-O-Fab determined coverage, Spectrum "handl[ed] records in connection with [the] 'Employee Benefits Programs.'" *(See* Pl.'s Mot. for Summ. J. Ex. B at subsection (b).)  Similarly, in later deciding that notwithstanding Plaintiff's earlier determination, Cummings claims were not in fact covered and the Hospital would therefore not be paid, Spectrum was acting to interpret the plan within the definition set forth in the EBL Endorsement to the Policy.

Once Plaintiff understood that Cummings was driving with an illegal blood alcohol limit, there was little need for discretionary decision making.  (*See* Def.'s Obj. to Pl's Mot. for Summ. J. Ex. A at 42:23-25, 43:1-5.)  Though Defendant attempts to create the appearance that discretionary decision making occurred, the record reveals that while the Hospital repeatedly tried to get Plaintiff to change its mind about non-coverage as to Cummings, Cust-O-Fab simply applied the Policy provision to the facts.  "The conversations we had were based on the section of the plan document that dealt with the illegal use of alcohol and the fact that the hospital provided us with the

---

[9]As previously stated, for purposes of this Order, the Court views Spectrum, Beech Street, and MSM as one entity.

documentation of what his content of the alcohol in Mr. Cummings caused us to deny the claim. And that's pretty much the extent of it."  (*Id*; *see also id.* at 27:5-23.)

In determining such, the Court again relies on the *Maryland Casualty* case and the rationale therein.[10]  As previously noted, the *Maryland Casualty* court found that the policy's definition of "administration" did not cover liability incurred in the management of the plan's investments. However, the district court did find that the insurer had a duty to defend and indemnify the insured for "failure to detect embezzlement."  The court reasoned that the failure to examine the trust checking account and checkbook is "clearly a charge of negligence and also falls within the 'handling of records' clause of the definition of administration." *Maryland Casualty Company*, 621 F. Supp. at 414.   Further, the court found that the calculation of benefits, which allegedly resulted in underfunding of the plan, fell within the clause "interpreting the Employee Benefits Programs" in the definition of administration.  *Id.*  The Court finds the allegations by the Hospital in the Potter County action are similar to the allegations in *Maryland Casualty* of improper calculation of benefits and are administrative in nature as contemplated by the Plan.

C.      *Duty to Defend*

The Court previously found that because the Contract Exclusion relieved Defendant of its duty to defend on breach of contract claims, the remaining negligence claims were not covered.  "In other words, because the negligent misrepresentation claim was simply a variation of the contract claim, it fell away with the contract exclusion."  (ORDER AND J. at p. 11-12).  The Tenth Circuit

---

[10]The Tenth Circuit agreed with this Court in its finding that *Maryland Casualty* does not weigh in Admiral's favor.  (*See* ORDER AND J. No. 04-5092 slip op. at 11 n. 2).  "[T]he claims at issue in the underlying suit in *Maryland Casualty* (embezzlement and violations of fiduciary duty and ERISA, among others) were, on the scale of acts from 'ministerial' to discretionary,' clearly at the latter end.  The same is not true here."  *Id.*

13

disagreed with the Court's conclusion on this point stating, "[w]e disagree that the contract exclusion necessarily applies to the Hospital's negligent misrepresentation claim." *Id.*

As the Court initial Order cited, "[u]nder the general rule, the insurer must defend all suits in which the complaint contains allegations falling within the policy's coverage.  Thus, although there is authority to the contrary, when there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside the policy coverage."  (ORDER at 12-13 quoting ERIC MILLS HOLMES, HOLMES' APPLEMAN ON INSURANCE 2D §136.2  (2003)). Now that this Court has reversed its decision regarding the Contract Exclusion, there is no basis for finding that Plaintiff's negligent misrepresentation claim is not covered.   In finding coverage on the negligent misrepresentation claim, the Court need not analyze the elements of such claim nor the operative facts giving rise to the claim.  For where covered and non-covered claims are both alleged in the underlying case, the insurer has the duty to defend the entire action.  *Blackhawk-Central City Sanitation Dist. v. Amer. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000) ("[I]f the underlying complaint asserts more than one claim, a duty to defend against all claims asserted arises if any one of them is arguably a risk covered by the pertinent  policy.").[11] When the Court previously found that the Contract Exclusion applied to preclude coverage of Plaintiff's negligent misrepresentation claim—as it was a reiteration of Plaintiff's contract claims—adopting Defendant's position that the negligent misrepresentation was not covered made sense.  Having now concluded that the Contract Exclusion

---

[11]Although *Blackhawk* applied Colorado law, it is authoritative here, as the relevant Oklahoma law and Colorado law do not differ. *See Columbia Nat'l Ins. v. Reroof America, Inc*., Case No. 01-5184, 2003 WL 463646 (10th Cir. 2003) (applying *Blackhawk* principles, where the district court found Oklahoma law did not differ from Colorado law).

does not apply, the Court cannot hold that there is no duty to defend the negligent misrepresentation claim.

      D.     *Duty to Indemnify*

As Defendant admits, the Insuring Agreement only applies when the loss is covered under the Policy and when the claim arises from a cause that is within the scope of the Insuring Agreement.  Thus, the Court's findings on remand require Admiral to indemnify Plaintiff.  Further, because Defendant did not participate in Plaintiff's defense or take part in the settlement of the underlying case, Defendant is barred from re-litigating the Potter County action regardless of whether the settlement addresses Plaintiff's culpability or apportions the settlement amount to specific claims.  *MIC Property and Cas. Insur. Corp. v. Int'l Insur. Co.,* 990 F.2d 573, 577 (10th Cir. 1993) (applying Oklahoma law).  Therefore, Defendant is liable to indemnify Plaintiff for the entire settlement of $105,000.00.  The Court refers the remaining factual issue of Plaintiff's defense costs to Magistrate Judge Frank McCarthy for an evidentiary hearing.

**V.      Conclusion**

IT IS THE ORDER OF THE COURT, Plaintiff's Motion for Summary Judgment (Dkt. No. 56) is GRANTED and Defendant's Motion for Summary Judgment (Dkt. No. 58) is DENIED. The remaining factual issue of Plaintiff's defense costs is REFERRED to Magistrate Judge Frank McCarthy for an evidentiary hearing.  Judgment shall be entered upon resolution of the issue of Plaintiff's defense costs.

ORDERED this 25th day of JULY, 2006

**TERENCE KERN
UNITED STATES DISTRICT JUDGE**

16